## JAMES JOHNSON

### v.

## RICHARD T. BEENEY.

1. EVIDENCE AS TO DAMAGES.—A party cannot be permitted to make his own statement of his grievances to a third party, and then make that third party's estimate of his damages a proper subject to go before the jury by testifying thereto himself.

2. DECEIT IN SALE.—To recover in an action of deceit, the statement must be untrue, the party making it must know that it is false, the person seeking to recover must have relied on the statement as true, and the statement must have been in relation to a matter material to the transaction.

3. MODIFICATION OF RULE.—But if one state for a fact as within his own knowledge, that which is material to the transaction and concerning which he has no knowledge, then if the statement proves untrue and injury follows, an action will lie, for he is guilty of deceit in falsely averring and maintaining his knowledge of the truth of his representations, when in fact he had no such knowledge.

4. DECEIT IN SALE OF LAND.—In an action for deceit in the sale of land, the plaintiff cannot recover damages for which he has not declared in his declaration. So, where the declaration alleged, among other things, that the defendant stated that twenty-four acres of the land was broken and had a post and rail fence around it, and that there was house on the land which had cost one hundred dollars, and there was no averment in the declaration impeaching the truth of these representations, evidence upon this point is not admissible, nor can damages be recovered therefor.

APPEAL from the Circuit Court of McLean county: the Hon. OWEN T. REEVES, Judge, presiding. Opinion filed June 21, 1881.

.Messrs. KINNEAR & MOFFIT, for appellants.

Mr. S. B. LYMAN, for appellees.

McCULLOCH, J.  When this case was before us on a former occasion, we held the measure of damages to be "the difference between the land purchased as it was at the time and what it would have been worth at the time if it had been as represented by the vendor, to which may be added interest on the difference." 5 Bradwell, 604. The *gravamen* of the case is

that appellant falsely represented that the land was good land; that from ninety to one hundred acres of it was good bottom land; that the balance was nice table land; that there was a peach orchard of one hundred good bearing peach trees, and a maple grove of forty-nine trees on the land; that twenty-four acres of it was broken, and had a post and rail fence around it; that there was a house on the the land, the lumber in which cost one hundred dollars, and that the taxes were paid; where-as, in truth and in fact, the land was rocky; that not to exceed fifteen acres of it was bottom land; that the land was poor and unfit for cultivation; that there was no peach orchard or maple grove on it; that the land was not worth more than one dollar per acre, and that there were taxes unpaid.

There is no averment in the declaration impeaching the truth of the representations that twenty-four acres of the land was broken and had a post and rail fence around it, and that there was a house on the land, the lumber in which had cost one hundred dollars. The damages sustained by appellee cannot therefore be predicated upon anything appellant may have said concerning the amount of broken land, or the fence or the house. His claim for damages must rest upon the alleged *false* representations of appellant, and not upon those which appellee does not question in his declaration. He cannot be allowed to make one case by his pleadings and another by his proof.

In the first deposition of J. B. Dobyn, read on the last trial, the witness had testified that the land consisted of one hundred and sixty acres of prairie land, lying partly on the bluffs of a creek, of which thirty or forty acres was valley land, the balance hilly, rocky and only fit for grazing; that eighteen acres of it *had been broken*, but had not been in cultivation for three years; that there was *no fence on it;* that there were eight or ten acres of good bottom land, twenty-five or thirty acres of table or second bottom land, and the balance hilly; that there was not a good bearing peach tree on the place in May, 1877, and that there were only ten or twelve maple trees; that there was a little stone fence, a frame house twelve by eighteen feet, a stone stable twelve by twenty feet, with hay roof and stone corn-crib.

F. M. Martin in his first deposition had also given a description of the land in somewhat similar terms to that of Dobyn.

The land was further described by other witnesses, whose depositions had been taken in Kansas, or who appeared in person upon the trial. In August, 1880, the depositions of Dobyn and Martin were again taken, and also the deposition of H. K. Burkman, apparently by virtue of one and the same commission. To each of these witnesses the following interrogatory was propounded: "Suppose the land testified about in your former deposition had consisted in May, 1877, of from ninety to one hundred acres of good tillable second bottom land; that there was twelve or fifteen acres of land a little higher, and the rest was level table land; that there was a house on the land, the lumber of which cost $100; that there was twenty-four acres of land broke and in cultivation and surrounded by a good board fence; that there were on the land one hundred good bearing peach trees; that there was a good well of water; a stone stable and corn-crib on the place; how much more would that one hundred and sixty acres of land be worth if the above description was correct, than the land as it was in fact in May, 1877." This question was objected to on the trial, because it was not warranted by the pleadings, but the court overruled the objection and permitted the same to be answered by each of said witnesses; Dobyn making the difference in value to be $750, Martin $900, and Burkman $800. In this the court erred. The question was much broader than the allegations of falsehood in the declaration, and should not have been allowed.

Appellee was permitted to testify against the objections of appellant, that when he went to see the land he told men about there what appellant had represented the land to be, and from what they told him he believed the land would have been worth $1,600 if as represented. This class of testimony is liable to the double objection that it not only permits the plaintiff's judgment of the value of the land formed from hearsay to go to the jury, but that hearsay evidence is itself the result of appellee's own *ex parte* statement of the alleged false

representations of appellant. A party in interest cannot be permitted to make his own statement of his grievances to a third party, and then make that third party's estimate of his damages a proper subject to go before the jury. In this also the court below erred.

It is also assigned for error that the circuit court erred in modifying the fourth instruction asked on behalf of appellant, and in reading the same as modified to the jury. The first instruction given on behalf of appellee limited his right of recovery to the facts that appellant made the representations complained of; that appellee relied upon them in making the trade; that they were false; that appellant *knew they were false* when he made them, and that in consequence thereof appellee had suffered damage. No complaint is made by appellant of this instruction.

On his behalf appellant asked the court to instruct the jury, in substance, that before appellee could recover he must prove by a preponderance of the evidence, not only that appellant made the representations set forth in the declaration, and that they were false, but that he must also show by his evidence, "that the defendant knew that these representations were false," otherwise he could not recover. The court however, modified this instruction so as to make the last clause read as follows: "that the defendant knew that these representations were false, or that defendant made these representations without knowing whether they were true or false," otherwise he could not recover.

It was contended on the part of appellant, and he so testified, that he had not been on the land since 1874; that he so informed appellee at the time of the trade, and that he then described the land to appellant as it was when he had last seen it. Under these circumstances it was important to him that the jury should be accurately instructed as to the grounds of his liability. The law seems to be well settled in this State, that to sustain an action for deceit the *scienter* must be proved. In Merwin v. Arbuckle, 81 Ill. 501, the rule is thus stated: "To recover in an action for deceit, the statement must be untrue, the party making it must know that it is false, and

the person seeking to recover must have relied on the state-
ment as true, and have been induced to act upon the state-
ment; and the statement, to authorize a recovery, must have
been in relation to a matter material to the transaction. " See
Wheeler v. Randall, 48 Ill. 182; Hiner v. Richter, 51 Ill.
299; Nolte v. Reichelm, 96 Ill. 425.

We are unable to see, and counsel for appellee have not
seen fit to enlighten us, by citation of authorities, why this
rule should not prevail in this case, sanctioned as it is by re-
peated decisions of our own Supreme Court. The charge in
the declaration is that appellant falsely and fraudulently
(which latter word includes the *scienter*—Merwin v. Ar-
buckle, *supra*,) represented the character, value and condi-
tion of the land, upon the faith of which representations ap-
pellee made the trade. If appellant, relying upon his former
acquaintance with the land, made the statements complained
of in regard to its condition, character and value in good faith,
believing them to be true, he was guilty of no deceit in re-
spect to the quality or condition of the land, and no action
therefor would lie against him. If, on the other hand, he
knew his statement to be false, then if the purchaser relied
upon them, and thereby suffered an injury, he can recover.

But the rule as thus stated and illustrated, is not without
its modifications. If one state for a fact, as within his own
knowledge, that which is material to the transaction, and con-
cerning the truth of which he has no knowledge, then, if the
statement proves untrue, and injury follows, an action will lie,
for he is guilty of deceit in falsely averring and maintaining
his knowledge of the truth of his representations, when in
fact he had no such knowledge. But in such case something
more is required than that he should falsely state as true, that
of which he has no knowledge. He must so represent it as to
induce in the mind of the person with whom he is dealing, a
belief that he is speaking from actual knowledge of the mat-
ter spoken of.

In Marsh v. Falkner, 40 N. Y. 562, which was a suit to re-
cover damages for false representations concerning the credit
of Kahn (a third party), it is said by Daniels, J., "The bur-

den was on the plaintiff of showing either that the defendant knew, or had good reason for believing that Kahn was insolvent, and that the representations were therefore false when made ; or that he intended the plaintiff should understand him to be communicating his own actual knowledge by means of them, when he possessed no knowledge upon the subject." In the same case Grover, J., states the doctrine thus :    " The counsel for the appellant does not question, but that, to entitle the plaintiff to recover, he must show that the representations were known to be untrue by the defendant at the time he made them, or that he assumed to have knowledge of their truth, knowing that he had no such knowledge.    In either event, a design to deceive the plaintiff would be fairly imputable to the defendant, for in either he uttered a conscious falsehood to the plaintiff ; in the former by stating what he positively knew to be false,    *    *    *    and in the latter by stating that he knew certain facts, of the truth of which he knew nothing."    In Cabot v. Christie, 42 Vt. R. 121, the court say :   " It is often said that a representation is not fraudulent, if the party who makes it believes it to be true. But a party who is aware that he has only an opinion how a fact is, and represents that opinion only as knowledge, does not believe his representation to be true.    As is well said in a note to the report of the case of Taylor v. Ashton, 11 Mees. & Wels. 418 (Philad. Ed), the belief of a party to be an excuse for a false representation, must be a belief in the representation as made.    The *scienter* will, therefore, be sufficiently established by showing that the assertion was made as of the defendant's own knowledge, and not as mere matter of opinion, with regard to facts of which he was aware that he had no such knowledge."

These principles seem to be well supported by the authorities referred to in the cases just cited.    The instruction now under consideration, as modified by the court, failed to state the rule correctly, in that it made appellant responsible if his representations proved false, although he might not then have assumed to have any positive knowledge in respect to the then present condition, character and value of the land, and al-

though he might have made these statements in perfect good faith, believing, from his former acquaintance with the land, that they were strictly true. Had he falsely assumed to have such knowledge, although at the time of the trade he knew not whether his representations were true or false, then, if appellee had relied upon his assertion of his knowledge of the truth of his representations concerning the land, and if they afterwards had proved untrue, and appellee had sustained damage by reason thereof, he might possibly have maintained an action for such deceit. But such is not the case supposed by this instruction. By following it the jury might have held appellant liable to make good his representations as to the character and condition of the land, no matter how innocently made. It ignores the most essential element of liability in actions of this nature, which is the assertion by words or acts of a conscious falsehood for the purpose of gaining an advantage over the other party. It placed appellant in a wrong position before the jury, and placed his liability upon more favorable grounds for appellee than his own counsel had asked. The modification of this instruction in the terms in which it was made was therefore erroneous.

The first instruction for appellee seems to contain a positive direction to the jury to allow interest on the difference between the value of the land as it was at the time of the trade, and its value as it would have been if the representations complained of had been true. There is no positive rule or law requiring interest to be so added. The plaintiff in such a case is entitled to be fully compensated for the loss sustained by him, and the amount of such damages must be left to the jury to be estimated by them according to the circumstances of each case. If the purchaser pays the price at the time of his purchase, we can see no objection to allowing him interest on the sum out of which he has been defrauded. If, on the other hand, the price has not been paid, and the purchaser is not chargeable with interest thereon, it might not be proper to allow it. We intended nothing further than this in our former opinion.

For the errors indicated, the judgment of the circuit court will be reversed and the cause remanded.

Reversed and remanded.